THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
*v.* FANNIE SOPER, Appellant.

Crimes — murder in first degree — trial — evidence — motive
— circumstantial evidence — importance of showing motive —
erroneous admission of evidence that decedent had made new
will a few months before murder where concededly defendant
did not know it — not competent to show testamentary intent
— error prejudicial where jury was permitted to base upon
evidence unjustified inference tending to sustain charge.

1. Where, on trial of an indictment for murder in the first degree,
the proof relied upon is circumstantial, the presence or absence of
apparent motives and the friendliness of the relations of the parties
are circumstances which may greatly diminish or increase the force
of other evidence tending to show guilt.

2. As proof of motive, the prosecution was properly permitted to
show that the decedent shortly after his marriage to defendant had
made a will leaving her all of his property, which will was in defend-
ant's possession, but to permit the prosecution to go further and prove
that a few months before the alleged murder, decedent had made a
new will leaving defendant but a small sum and the remainder of his
property to his sons, is erroneous, where, concededly, the existence of
that will was not known to the defendant.

3. An argument that the evidence was competent to prove testa-
mentary intent of the deceased, cannot be sustained, since testa-
mentary intent unknown to the defendant could not influence her
actions and, therefore, could be no relevant factor in the crime or
tend to show its commission.

4. Admission of evidence which has no probative force upon the
question of whether the defendant committed the crime is erroneous
and the error becomes prejudicial and may not be disregarded when
the jury is permitted, as it was in this case, to base upon that evi-
dence unjustified inference of the existence of a state of affairs which
if true, would tend to give force to the charge against the defendant.
Nor can it be justified on the ground that the jury was entitled to know
that the earlier will was revoked, when the revocation of that will is
irrelevant and yet is used as argument for a conclusion which it does
not sustain.

(Argued May 10, 1926; decided July 9, 1926.)

1926.]          Opinion, per Lehman, J.          [243 N. Y. 320]

Appeal from a judgment of the Supreme Court, rendered November 20, 1925, at a Trial Term for the county of Essex upon a verdict convicting the defendant of the crime of murder in the first degree.

*Patrick J. Tierney* and *James C. McMahon* for appellant. It was reversible error to admit in evidence the will of the deceased dated January 19, 1924. (*People v. Buchanan,* 145 N. Y. 1; *People v. Wilson,* 109 N. Y. 345; *People v. Kinney,* 202 N. Y. 389; *People v. Messner,* 45 N. Y. 1; *People v. Wansker,* 191 App. Div. 575; *Montag v. People,* 30 N. E. Rep. 337; *People v. Van Aken,* 217 N. Y. 533; *People v. Osmond,* 138 N. Y. 80; *People v. Holloway,* 151 Pac. Rep. 975; *People v. Smith,* 172 N. Y. 210.)

*O. Byron Brewster* for respondent. The admission in evidence of the second and last will and testament of deceased was proper and non-prejudicial to defendant. (*People v. Creasy,* 236 N. Y. 205; *People v. Harris,* 136 N. Y. 452; *People v. Greenfield,* 136 N. Y. 423; *People v. Hendrickson,* 1 Park. 406; *Richards v. U. S.,* 175 Fed. Rep. 911; *People v. Harris,* 136 N. Y. 423; *People v. Straight,* 148 N. Y. 566; *People v. Willson,* 109 N. Y. 345; *People v. Berham,* 160 N. Y. 402; *People v. Decker,* 157 N. Y. 186; *People v. Jones,* 99 N. Y. 667.)

Lehman, J. The defendant has been convicted of murder in the first degree. The victim of the crime, of which she has been found guilty, was her own husband, William Henry Soper. He was shot with a revolver and instantly killed, shortly before noon on May 28, 1925. At the time of his death the defendant's husband was a farmer. He was also a deputy sheriff of Essex county. The defendant notified the sheriff's office that her husband had been shot and she also telephoned for a physician.

[243 N. Y. 320] Opinion, per Lehman, J. [July,

She told them and others that her husband was shot by a strange man who had called at the house and asked for Henry Soper, the deputy sheriff. The body of the murdered man rested upon a couch in the kitchen. Death was caused by two bullet wounds in the top of the head. The bullets were shot from a pistol held not over three inches away. From the position of the body it is quite evident that the murdered man had fallen asleep before he was shot. At the trial the defendant testified, in effect, that her husband had returned to the house, after finishing some planting in the fields. She was at the time preparing the midday meal. Her husband washed up and then reclined on the couch. He took up a book and adjusted his spectacles for reading, but fell asleep. A stranger came to the door and asked for "Henry Soper, the deputy sheriff." The defendant directed him to the kitchen where her husband was lying but thinking that his business with her husband concerned her husband's official duties as deputy sheriff, she did not accompany him. A moment later she heard shots and the stranger hurried from the house and drove away in an automobile he had left when he came to the house. She had told substantially the same story from the time she notified the sheriff's office, though one witness testified that, at the time she gave the notification, she said that her husband had come to the door when the stranger called and was shot down there. Concededly when the murder occurred no witness was present. No witness could testify directly that the defendant committed the murder. Conviction rests upon circumstantial evidence. The wounds could not have been self-inflicted. Death was instantaneous and the person who committed the murder must have carried away the revolver from which the bullets were shot, for no revolver was found near the body. There can be no doubt that this person was either the defendant or the alleged stranger upon whom the defendant seeks to fasten the crime. If her story about this

1926.]                Opinion, per Lehman, J.        [243 N. Y. 320]

stranger is false, all hypotheses except the defendant's guilt are excluded.

The defendant at the time of the murder was a woman forty-nine years of age. She had lived all her life in the same neighborhood. The defendant married the deceased in January, 1923. Both had been married before, the defendant twice, and both had children by earlier marriages. The defendant had always borne a good reputation in the community. The testimony is uncontradicted that she and her husband were on good terms; that she accompanied him sometimes when he was driving about on his official business as deputy sheriff and that together they visited their neighbors, attended church entertainments and took part in the usual social life of the rural community in which they lived. Neighbors saw them together on the very day of the murder and apparently noted nothing unusual in their demeanor and there is no reason to doubt that when her husband came home that day she was engaged in housewifely duties preparing a meal for him. Men and women of good reputation who have lived in manner that seemed exemplary to the world at large do sometimes commit heinous crimes. The force impelling to wrong which overcomes the inhibitions of a lifetime is not always capable of analysis or explanation or indeed discernible. Motives that are unsuspected or apparently trivial may have potent influence. It is possible that this defendant living apparently in friendly relations with her husband may yet have formed the deliberate plan of killing her husband while he lay helpless in sleep, in the fancied security of his own home, but the jury's verdict must rest not merely upon the possibility that the defendant *may* have committed the crime but upon proof which removes any reasonable doubt that she *did* commit it. Where the proof relied upon is, as in this case, circumstantial, the presence or absence of apparent motives and the friendliness of the relations of the parties are circumstances

which may greatly diminish or increase the force of other evidence tending to show guilt. Extended analysis of the testimony of all the witnesses produced by both sides at the trial would serve no purpose. We shall summarize it only to the extent necessary for the statement of those considerations which in our opinion require that the defendant should have a new trial.

Promptly after the defendant gave notice that her husband had been shot, the district attorney and members of the State Police began an investigation at the defendant's house. They discovered there a revolver. The revolver belonged to the deceased. It was in the pocket of a coat of deceased hanging in a bedroom. It contained three cartridges that had been discharged. One of these cartridges showed evidence of having been fired some time before, two showed evidence of recent discharge. The defendant was questioned at length in the presence of a large number of officers who expressed belief in her guilt. She volunteered an explanation for the presence of the exploded cartridges in the revolver. It may be conceded that this explanation is improbable, nevertheless it is not impossible. It is said that the defendant's story of the presence of the stranger is on its face so improbable that its falsity is manifest; that persons in position to see a stranger coming and going from the decedent's house testified that there was no such stranger; that at times the defendant's story varied; that her demeanor showed consciousness of guilt and that she tried to conceal the existence of the revolver from the officers of the law. In great part the inferences which the prosecution asks us to draw from such circumstances rest upon conflicting testimony and disputed facts. In part the inferences are doubtful, even though conflict in the testimony be resolved against the defendant. Proof of attempt to conceal the weapon is vague if not illusory. If the defendant's story at times varied and even that is doubtful, the variations might be explained by the stress

1926.]          Opinion, per LEHMAN, J.          [243 N. Y. 320]

under which the defendant must have labored when she told the stories. At most we may say that cumulatively the circumstances might permit the jury to draw some inference against the defendant. Such inference would certainly be far from conclusive as to the defendant's guilt unless supplemented by proof that the fatal shots were actually fired from the revolver found in the coat of the deceased.

The trial judge charged the jury that they must " determine whether or not the bullets in the body of the deceased came from his own revolver. That is the basis of the case of the People. If they did not then there is a failure in proof and defendant is entitled to an acquittal." The bullets found in the body of the deceased were fired from a revolver of the same calibre as the revolver which was found. Of course, there are many revolvers made of the same calibre. When taken from the body of the deceased, the bullets were more or less distorted by contact with the bone. Nevertheless two experts produced by the prosecution testified, in effect, that they found and measured certain marks on the bullets and that these marks corresponded exactly with so-called " grooves " and " lands " in the barrel of the revolver and that these bullets were fired from that particular revolver. If that testimony were uncontradicted and unimpeached, then inference of defendant's guilt would be so clear that error in the admission or exclusion of other testimony might perhaps be disregarded. The defendant did not permit the testimony of the expert witnesses to go unchallenged. She produced other experts of standing and experience who testified that the method of examination of bullets and revolver barrel was inaccurate and could result in no reliable data for comparison. They claimed that only by comparison of the marks on the bullets which caused death with the marks on another bullet fired from the revolver could proof of identity be made. It is undisputed that opportunity to make this comparison was refused by the

prosecution on the ground that the marks in the barrel of the revolver might be changed if a bullet were fired for basis of comparison through the barrel.

The jury must pass upon the weight that should be given to the testimony of the experts. Apparently they have given such weight to the testimony of the experts who appeared as witnesses for the prosecution, that upon that testimony, in connection with the other circumstances in the case, they have found the defendant guilty of deliberately murdering her husband in his sleep. That testimony has outweighed the denials of the defendant. It has outweighed the presumption of innocence. It has outweighed previous good reputation. It has outweighed the fact that previously the defendant and her husband were apparently living in friendly relations.

The prosecution has attempted to show that the defendant had motive for killing her husband. It is undisputed that shortly before the murder the defendant and her husband had decided to move from the farm to a neighboring town. The defendant with her husband's consent, had agreed to purchase a house there. She had deposited in a savings bank the sum of $4,000 received from the estate of her second husband who had died in December, 1921. She had arranged to draw from this account the purchase money for the newly-acquired house. The transaction was about to be completed at the time of the murder. Argument is made that when the defendant arranged to draw her money from the bank she realized that she and her husband had scant means for their joint support after they left the farm. Her husband had little property. He owned the farm but that was of small value. He had made a will in 1923 leaving to the defendant all of his property. That will was in defendant's possession. Expectation that after the death of her husband she would receive his small property and be able to live alone upon its proceeds, though these proceeds would be insufficient for the support

of both, or perhaps fear that her husband might change his will, is urged as sufficient motive for the crime. There was no error in the admission of such evidence and the jury had the right to pass upon its effect. The prosecution, however, went further and proved over defendant's objection and exception that in January, 1925, the deceased had made a new will leaving to the defendant $100 and giving the remainder of the property to his two sons. Concededly, the existence of that will was not known to the defendant. If it had been known to her then it would itself have negatived the motive which the prosecution argues impelled the crime.

We are unable to see how the evidence of the later will, the existence of which was unknown to the defendant, could be relevant to any issue that might properly be raised in this case. The trial judge held that it was competent to prove testamentary intent of the deceased. An executed testamentary instrument obviously shows testamentary intent but testamentary intent of the decedent unknown to the defendant could not influence the defendant's actions and, therefore, could be no relevant factor in the crime or tend to show its commission. It is said that from the change by the deceased in the testamentary disposition of his property, the jury might infer that the matrimonial relations of the parties were no longer as cordial as before. Undoubtedly the jury was permitted to draw such inference from this testimony, for over the objection and exception of the defendant the district attorney was permitted in his summing up to say: " Whether the sea was calm or whether the tempest and hurricanes of temper continually lashed the angry waves and their frail bark we don't know. We don't know much about it, but there is one little rift in the midst where we are permitted to look and that is this: Five months after Henry Soper embarked upon that voyage he made a will and he gave every single particle of his wordly goods to his third wife of five months

standing." Inference that the relations of the parties were no longer harmonious would be prejudicial to the defendant's rights. It would tend to negative the testimony of friendly relations. It would give apparent force to a motive which might otherwise be insufficient.

It may be doubted whether the change by the husband of testamentary intent towards his wife shows a change in his affection towards her. It may as well, in this case, have been caused by increased needs of his sons or by change in his affections towards them. We pass that doubt for even a cooling of the affection of the husband for his wife would not show correlative change in her affections towards him. The very fact that the existence of the second will was concealed from the wife would rather tend to show that the deceased wished the defendant to regard their relations as unchanged. Only change of feelings shown to the wife could influence her feelings towards him. Only the state of her affections for him could influence her acts. Admission of evidence which has no probative force upon the question of whether the defendant committed the crime is erroneous. The error becomes prejudicial and may not be disregarded when the jury is permitted to base upon that evidence unjustified inference of the existence of a state of affairs which if true, would tend to give force to the charge against the defendant. It cannot be justified on the ground that the jury was entitled to know that the earlier will was revoked, when the revocation of that will is irrelevant and yet is used as argument for conclusion which it does not sustain.

It follows that the judgment of conviction should be reversed and a new trial ordered.

MCLAUGHLIN, J. (dissenting). I am unable to concur in the prevailing opinion that the judgment of conviction should be reversed, and it is, therefore, proper that I should state the reasons for my conclusion.

1926.!    Dissenting opinion, per McLAUGHLIN, J.    [243 N. Y. 320]

Shortly before noon on the 28th of May, 1925, William H. Soper, the husband of the defendant, was killed by two shots fired at close range from a .32 calibre revolver. The defendant was indicted, tried and convicted as the person who fired such shots. A careful consideration of the record on appeal convinced me that the defendant not only had a fair trial but that the jury could not honestly have rendered any verdict other than guilty, and that no errors were committed which would justify a reversal of the judgment of conviction.

Two grounds, and two grounds only, are urged by defendant's counsel as calling for a reversal. The first is that the verdict is against the weight of evidence. In my opinion, the verdict is not against the weight of evidence but, on the contrary, is overwhelmingly sustained by it. The testimony of the defendant as to what took place immediately preceding and at the time of the shooting is so incredible and improbable that it is difficult to even imagine how twelve honest jurors could have reached any other conclusion than they did. In any view, at the close of the evidence, a case was made for the jury which had to be submitted to it. It was for the jury to weigh the evidence and to pass upon the credibility of the different witnesses. The jurors saw the witnesses, they heard them testify, and observed their demeanor upon the witness stand, and, therefore, were better able than an appellate judge to determine what testimony was true or false. (*People* v. *Sliney*, 137 N. Y. 570; *People* v. *Ferraro*, 161 N. Y. 365; *People* v. *Ford*, 200 N. Y. 209.) I do not understand that there is any disagreement among the judges of this court that at the conclusion of the evidence there was a question of fact as to whether the defendant was guilty of the crime charged, which fact had to be submitted to and determined by the jury. The jury found the defendant guilty and the evidence sustains that finding.

But it is said, and this is the second point urged by

appellant's counsel for reversal, that an error was committed at the trial in the admission of evidence, which calls for such reversal. In order to intelligently consider and pass upon the alleged error it is necessary to briefly state a few facts connected therewith.

The defendant and the deceased were married on the 12th of January, 1923, each having been married twice before. At the time the defendant was married to Mr. Soper she was about fifty years of age and he was some ten years her senior. There was no issue of this marriage but the deceased had two sons by his second marriage, both of whom survived him. On the 5th of May, 1923, a little less than five months after the marriage of the deceased and the defendant, he made a will by which he gave her all of his property. The will was executed in her presence, and the subscribing witnesses were her daughter and her daughter's husband. The defendant knew the contents of the will and had possession of it at the time of the homicide, and between that time and the time she was arrested she delivered the same to the son in-law for safekeeping. On January 19, 1924, a little over seven months after the first will was made, the deceased made a second will by which he bequeathed all his property to the two sons above referred to, except $100 which he gave to the defendant. The district attorney, for the purpose of establishing a motive on the part of the defendant for taking the life of her husband, introduced in evidence the first will. From this he could legitimately argue to the jury that she, knowing the contents of that will and possibly apprehensive that the deceased might make a different disposition of his property, decided to take his life before he could make such change. The district attorney, however, could not resort to such an argument knowing that another will had subsequently been made by which the defendant was deprived of the substantial part of her husband's property. The ethics of the legal profession required that

he should disclose the fact to the court and the jury. The fairness of the trial and the proper administration of justice necessitated such disclosure. He, therefore, offered the second will in evidence. This was objected to, the objection was overruled, and the will was received. It is true that, so far as appears, the contents of the second will or the fact that it had been made were unknown to the defendant at the time of the homicide. It, however, was received, according to the charge to the jury, for the sole purpose of proving the testamentary intent on the part of the deceased at the time the second will was executed.

I am of the opinion that the second will was properly received in evidence for the following reasons:

(a) It was the duty of the district attorney to disclose to the trial court and to the jury the fact that such will had been made. This he could not do without offering it in evidence. Not to introduce the second will in evidence would have constituted error on the part of the People. (*People* v. *Creasy*, 236 N. Y. 205.)

(b) It was admissible in evidence as showing a change of feeling on the part of the deceased as to the testamentary disposition of his property. By the first will he had given the defendant all of his property; by the second will she was deprived, except in a small amount, of all interest in his estate. The second will indicated a change of feeling on the part of the deceased and from all the facts the jury was justified in drawing the inference that, prior to the homicide, the defendant had discovered such change. As I understand it, the rule in this State, established by many decisions, is that any evidence is admissible if illustrating the mutual relations and relative feelings of husband and wife where one is on trial for the murder of the other. (*People* v. *Harris*, 136 N. Y. 423, 452; *Greenfield* v. *People*, 85 N. Y. 75.) The extent of the inquiry into such relation and feeling rests quite largely in the discretion of the trial court. (*Common-*

*wealth* v. *Howard,* 205 Mass. 128, 148.) The fact that acquaintances who casually saw them together at different times testified that their feeling toward each other was apparently friendly does not and cannot outweigh the fact that the deceased did have a change of feeling with reference to the testamentary disposition of his property. Differences between husband and wife are not usually aired in public, except in courts. Such differences are generally discussed in private.

(c) I think the second will was admissible for another reason. While it is true that the record does not disclose that the defendant knew anything about the second will, nevertheless, for the reasons already given, the jury had a right to find that the execution of the second will was the result of a change of feeling on the part of the husband toward his wife. From that change of feeling, the jury could legitimately infer that the wife had discovered that fact and, having ascertained that it existed and apprehensive that he might by reason thereof change the first will and thereby deprive her of any interest in his estate, she sought to prevent his making such change by taking his life.

But even if it be assumed that a technical error was committed in the admission of the second will in evidence, I cannot believe that the jury in any way predicated its verdict upon that, especially in view of all the evidence and the limited consideration by the jury of the second will under the charge of the court. The jury was instructed that the defendant had no knowledge of the second will; that it was admitted in evidence for one purpose, and one purpose only — to show the testamentary intention of the deceased. If it was error, it was an immaterial one. It is not *every* error committed in the trial of a criminal case that will warrant an appellate court on review in reversing a judgment of conviction. The statute prohibits such result. It provides: "After hearing the appeal, the court must given judgment,

without regard to technical errors or defects or to excep-
tions which do not affect the substantial rights of the
parties." (Code Crim. Pro. sec. 542.) The reception of
the second will in evidence did not, in my opinion, affect
the substantial rights of the defendant.

I, therefore, vote to affirm the judgment of conviction.

HISCOCK, Ch. J., CARDOZO and CRANE, JJ., concur with
LEHMAN, J.; McLAUGHLIN, J., dissents in opinion in
which POUND, J., concurs; ANDREWS, J., absent.

Judgment reversed, etc.